| | | |
|---|---|---|
| DEANTWUNG EPPS, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case Nos.: 1:25-CV-121 |
| | ) | 1:15-CR-120 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Curtis L. Collier |
| | ) | |
| *Respondent*. | ) | |

**M E M O R A N D U M**

Before the Court is a motion by Petitioner, Deantwung Epps, to correct his second revocation judgment and vacate his third revocation judgment under 28 U.S.C. § 2255. (Doc. 2.) The United States (the "Government") has responded in opposition (Doc. 6), and Petitioner has replied (Doc. 13). The matter is now ripe for review.

**I.      BACKGROUND[1]**

In 2016, pursuant to a plea agreement, Defendant pleaded guilty to a charge of possession of a firearm and ammunition by an unlawful user of controlled substances, in violation of 18 U.S.C. § 922(g)(3). (Doc. 43.) Defendant's guideline range was thirty-three to forty-one months based on his offense level of thirteen (13) and criminal history category of VI. (Doc. 44 at 1.) The statutory maximum term of supervised release was three years. (*Id*.) Consistent with the guideline range and statutory maximum, the Court sentenced Defendant to thirty-three months' imprisonment, followed by three years of supervised release. (Doc. 43 at 2–3.)

---

[1] The background section cites to the related criminal case, 1:15-CR-120. The remainder of the memorandum cites to the civil case, 1:25-CV-121, unless otherwise stated.

Defendant completed that term of incarceration in May 2018 and began serving his three-year term of supervised release. (Doc. 53 at 1.) Within the next two months, Defendant was arrested twice. (*Id*. at 2.) On July 7, 2018, Defendant was arrested and charged with tampering with or fabricating evidence, resisting arrest or obstruction of legal process, evading arrest, possessing a firearm with intent to go armed, and simple possession of a controlled substance in Schedule II. (*Id*.) On July 13, 2018, Defendant pleaded guilty to three of these charges: evading arrest, possession of firearm, and simple possession of a controlled substance. (*Id*.) Two days later, on July 15, 2018, Defendant was arrested and charged with possession of crack cocaine for resale. (*Id*.) Defendant did not report his new arrests or new convictions as required. (*Id*.) He also failed to provide verification of employment, to submit a monthly report, and to appear for a random drug screen. (*Id*. at 3.) Due to these violations of the conditions of his supervised release, the probation office petitioned the Court to revoke his term of supervised release. (*Id*.)

On March 27, 2019, Defendant admitted to violating these conditions of his supervised release. (Doc. 62 at 1.) The Court revoked Defendant's term of supervised release and sentenced him to fourteen months' imprisonment, followed by two years of supervised release. (*Id*. at 2–3.) According to Bureau of Prisons records, Defendant was placed at the Salvation Army Residential Reentry Center in Chattanooga, Tennessee, for the last four months of imprisonment, from October 15, 2019, until February 7, 2020. (Doc. 63 at 3.) During these four months, Defendant received seventeen incident reports. (*Id*.)

Once released from incarceration, Defendant refused to cooperate with the probation office as required. Defendant "failed to provide an address of record within the [Eastern District], failed to provide proof of employment . . . , failed to contact USPO [] regarding [the random drug testing], and failed to maintain a means of direct communication." (*Id*. at 9.) On the few occasions

Defendant did comply with the drug testing, he tested positive for marijuana. (*Id*. at 7–8.) Further, on November 15, 2020, Defendant was arrested for vandalism, tampering with or fabricating evidence, resisting arrest or obstruction of legal process, evading arrest, possessing a firearm with intent to go armed, possession of a controlled substance, and possession of drug paraphernalia. (*Id*. at 8.) Based on these violations, on November 23, 2020, the probation office petitioned the Court to revoke Defendant's supervised release. (*Id*. at 10.)

On February 16, 2022, Defendant admitted to violating the conditions of supervised release. (Doc. 82 at 1.) The Court revoked Defendant's term of supervised release and sentenced him to twenty-one months' imprisonment, followed by one year of supervised release. (*Id*. at 2–3.) Defendant began his third term of supervised release on February 8, 2023. (Doc. 84 at 2.) On May 11, 2023, Defendant was arrested and charged with possession of drugs for resale. (*Id*. at 2–3.) Defendant failed to report the new arrest to the probation office. (*Id*. at 3.) Based on these violations, the probation office petitioned the Court to revoke his third term supervised release. (*Id*. at 2–3.)

On November 20, 2024, Defendant admitted to violating the conditions of supervised release. (Doc. 94 at 1.) The Court revoked Defendant's term of supervised release and sentenced him to twenty-three months' imprisonment, with no supervised release to follow. (*Id*. at 2–3.) Defendant appealed the third revocation judgment, which is currently being held in abeyance in the Court of Appeals for the Sixth Circuit pending this motion. (Doc. 3.) Defendant's current release date is June 4, 2026. *See* Fed. Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/ (last visited October 1, 2025).

Pursuant to 28 U.S.C. § 2255, Petitioner now moves to correct the second revocation judgment (Doc. 82) and to vacate the third revocation judgment (Doc. 94), arguing that he is

3

eligible for immediate release.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct a sentence when the sentence imposed was in violation of the Constitution or federal law, the court was without jurisdiction to impose such a sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack.  To prevail on a § 2255 motion, the petitioner "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)).  The law is clear that "§ 2255 claims that do not assert a constitutional or jurisdictional error are generally cognizable only if they involved 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks omitted)). This standard is met only in "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Hill v. United States*, 368 U.S. 424, 428 (1962) (quoting *Brown v. Johnston*, 306 U.S. 19, 27 (1939)).

## III. DISCUSSION

Petitioner moves the Court to correct the second revocation judgment (Case No. 1:15-CR-120, Doc. 82) and to vacate the third revocation judgment (Case No. 1:15-CR-120, Doc. 94).  (Doc. 2 at 1.)  The Court will address each revocation judgment in turn.

A. **Petitioner's Second Revocation Judgment**

Petitioner moves the Court to correct the second revocation judgment (No. 1:15-CR-120, Doc. 82) because it "exceeds the permissible statutory limits on the amount of supervised release that can be ordered as part of a revocation hearing, pursuant to 18 U.S.C. § 3583(h)." (Doc. 2 at 1.)

"Federal law limits the maximum supervised release term a district court may impose following revocation of an earlier term." *United States v. Edison*, No. 23-1473, 2024 WL 1550871, at *1 (6th Cir. Apr. 10, 2024). "The new term 'shall not exceed the term of supervised release authorized by statute' for the original offense, 'less any term of imprisonment that was imposed upon revocation of supervised release.'" *Id.* (quoting 18 U.S.C. § 3583(h)). The Sixth Circuit has determined 18 U.S.C. § 3583(h) "requires the court to also subtract the length of any term of imprisonment imposed upon a prior revocation of supervised release related to the same underlying offense." *United States v. Price*, 901 F.3d 746, 750 (6th Cir. 2018). "As a result, in determining 'the maximum term of supervised release . . . , 18 U.S.C. § 3583(h) requires that the term be reduced by all post-revocation terms of imprisonment imposed with respect to the same underlying offense, not only by the most-recent term of imprisonment.'" *Id*. (citing collected circuit court cases). "In the ordinary case, § 3583(h) is enforced by resorting to elementary math principles." *Edison,* 2024 WL 1550871, at *1.

Three years, or thirty-six months, is the maximum term of supervised release authorized for Defendant's underlying 18 U.S.C. § 922(g)(3) offense for being an unlawful user of a controlled substance in possession of a firearm and ammunition. *See* 18 U.S.C. § 3583(b)(2); 18 U.S.C. § 3559(a)(3). During Defendant's first revocation, the Court sentenced him to fourteen months' imprisonment (Case No. 1:15-CR-120, Doc. 62 at 2), and during his second revocation,

5

the Court sentenced him to twenty-one months' imprisonment (Case No. 1:15-CR-120, Doc. 82 at 2). Section 3583(h) requires the Court to subtract these thirty-five months' imprisonment from the original thirty-six-month maximum. *See Price*, 901 F.3d at 751. Therefore, resorting to elementary math principles, the maximum term of supervised release the Court could impose as part of Defendant's second revocation was one month. *See Edison,* 2024 WL 1550871, at *1. Accordingly, the one-year-term of supervised release exceeded the statutory-maximum term. *See Price*, 901 F.3d at 751; *United States v. Hinton*, No. 21-3166, 2021 WL 5505498, at *5 (6th Cir. Nov. 24, 2021) (quoting *Price*, 901 F.3d at 751) ("In *Price*, we held such an error is "obvious and not subject to reasonable dispute.").

Based on this, Petitioner argues that "[t]he Court lacked jurisdiction to revoke [him] for a third time because the conduct that was the basis of the revocation occurred more than one month after he started his third term of supervision." (Doc. 2 at 5 (emphasis removed).) In response, the Government agrees that "although unnoticed by the Court or the parties at the time, the supervised-release terms imposed in the first and second revocation judgments in this case each exceeded the statutory maximum." (Doc. 6 at 7.) However, the Government argues Petitioner's claims against his second revocation judgment fail for three reasons: (1) Petitioner's challenge is moot because the sentence has already expired; (2) Petitioner's challenge is procedurally defaulted because he did not appeal from his second revocation judgment; and (3) Petitioner's challenge is untimely because he did not bring them within the statute of limitations for § 2255 motions. (Doc. 6 at 3–4.)

The parties agree that the second revocation judgment exceeded the statutory maximum. However, the Court must evaluate whether mootness, procedural default, or timeliness nonetheless bar Petitioner's challenge to the second revocation judgment.

6

### 1. Mootness

The Court will first address whether Petitioner's challenge to his second revocation judgment is moot.

The Government states, "[h]ad the Court been informed that its sentences exceeded the statutory limits, the Court would undoubtedly have reconsidered what lawful combination of imprisonment and supervised release would best satisfy 18 U.S.C. § 3553(a). . . . But [Petitioner] has already completed those sentences imposed by the first and second revocation judgments," making Petitioner's challenge moot. (Doc. 6 at 8.)

In response, Petitioner argues his challenge is not moot because "[t]he Supreme Court has long recognized that a criminal defendant's challenge to a prior conviction is not moot, even if he fully served his sentence, where the conviction results in 'collateral consequences' such as limiting one's basic liberty interests." (Doc. 13 at 4–5 n.4 (quoting *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968)).) Petitioner contends that his "current incarceration is a collateral consequence (if not direct consequence) of the error in the second judgment. Had the second judgment been properly limited to one-month of supervised release, he would not currently be incarcerated under the third revocation judgment." (*Id.*)

The Court agrees with Petitioner. The federal judiciary has the power to decide "Cases" and "Controversies." U.S. Const. art. III, § 2. This power reaches cases when a criminal defendant suffers an injury traceable to the government likely to be redressed by a favorable judicial decision. Otherwise, the case is moot. *United States v. Penn*, 788 F. App'x 337, 339 (6th Cir. 2019) (finding that Defendant's § 2255 motion was not moot because "if defendant was not an armed career criminal, then his sentence would be shortened by several years."). Here, if Petitioner's supervised-release term expired once the statutory maximum was met on March 8, 2023, one

7

month into the third supervised-release term, then he would not have had his supervised release revoked and been incarcerated for conduct that happened in May 2023. *See Penn*, 788 F. App'x at 339. In other words, but for the one-year supervised-release term imposed by the second revocation judgment, Defendant would not be incarcerated now. And a favorable decision would redress Petitioner's injury. *See id.* Thus, because Petitioner collaterally attacks a legal error which "infect[ed] . . . [his] future revocation punishment[]," Petitioner's claim is not moot. *See id.* at 340.

### 2. Procedural Default

The Court will next address whether Petitioner's challenge to his second revocation judgment is procedurally defaulted since Petitioner did not appeal from his second revocation judgment. (Doc. 6 at 5.) Petitioner argues that because "the harm here is the result of a lack of jurisdiction, none of the government's procedural arguments (*i.e.*, that the claim was procedurally defaulted and untimely) carry any weight, even with respect to the second judgment." (Doc. 13 at 10 (citing *Goode v. United States*, 305 F.3d 378, 386 (6th Cir. 2002) ("A jurisdictional defect cannot be waived or procedurally defaulted.")).)

Petitioner is correct, generally, that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Therefore, because Petitioner raises a jurisdictional defect, Petitioner's challenge to his second revocation judgment is not procedurally defaulted. *See id.*

### 3. Timeliness

The Court will now address whether Petitioner's challenge to his second revocation judgment is untimely. Under § 2255(f), a one-year limitations period applies to § 2255 motions. As noted above, Petitioner did not appeal his second revocation judgment to the Sixth Circuit. Accordingly, his judgment of conviction became final when his time to appeal expired on March 9, 2022. *See* Fed. R. App. P. 4(b)(1)(A) (noting that in a criminal case, the defendant must file his notice of appeal within 14 days after the latter of the entry of the judgment being appealed or the filing of the government's notice of appeal). Thus, Petitioner had one year from March 9, 2022, or until March 9, 2023, to file a timely § 2255 motion challenging the second revocation judgment. As the Government points out, Petitioner filed his § 2255 petition on April 11, 2025, over two years after the one-year period of limitation ran. (Doc. 6 at 4 (citing 28 U.S.C. § 2255(f)(1)).)

Despite this timing, Petitioner suggests that he can challenge the jurisdictional issue irrespective of § 2255's statute of limitations. (Doc. 13 at 10.) However, "[m]ost of the courts that have addressed the issue have held that jurisdictional challenges are subject to the same limitation for filing § 2255 motions." *Davis v. United States,* No. 2: 12-cv-2010, 2015 WL 1467071, at *8 (W.D. Tenn. Mar. 30, 2015) (citing collected cases). "Although [Petitioner] is challenging the Court's subject-matter jurisdiction over his offense, '[§] 2255 specifically contemplates motions made by prisoners alleging that the court lacked jurisdiction to render the judgment or to sentence the prisoner, and § 2255(f) provides no exception to the one-year time limitation period for such challenges.'" *Williams v. United States*, No. 1:22-CV-523, 2024 WL 4457022, at *3 (W.D. Mich. Oct. 10, 2024) (citing collected cases). Thus, Petitioner's challenge of the second revocation judgment is untimely. The Court will therefore **DENY IN PART** the § 2255 motion (Doc. 2) to the extent the Court will not correct the second revocation judgment (Case No. 1:15-CR-120, Doc. 82).

### B. Petitioner's Third Revocation Judgment

The Court now addresses Petitioner's challenge to the third revocation judgment. Petitioner suggests the Court had no jurisdiction to impose Petitioner's third revocation judgment "because the conduct that is the basis of this revocation occurred outside the statutorily authorized period of supervision." (Doc. 2 at 1.) Petitioner argues he "is entitled to relief under § 2255 from his current term of incarceration, as his current sentence is not only 'outside the statutory limits,' but it is also based on 'an error of . . . law so fundamental as to render the entire [third revocation] proceedings invalid.'" (Doc. 13 at 4 (quoting *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).)

The United States does not assert any procedural hurdles to Petitioner's challenge to the third revocation judgment. Rather, it argues the sentence Petitioner is serving under the third revocation judgment need not be vacated because unlike the second revocation judgment, it does not "exceed the statutory maximum for supervised release, as it includes no supervised-release term at all." (Doc. 6 at 8.) The Government suggests that because "the second revocation was not automatically void (although its term of supervised release unquestionably exceeded the maximum authorized by statute), the Court had jurisdiction to impose the third revocation judgment." (*Id.* at 9–10.) In response, Petitioner contends the Government's argument "that the Court's second judgment created jurisdiction to incarcerate [him] beyond the limits set by Congress" conflicts with and ignores both Sixth Circuit and Supreme Court precedent "setting out the limits of the federal courts' subject-matter jurisdiction." (Doc. 13 at 5.)

Federal courts have limited jurisdiction and can only adjudicate cases about "those subjects encompassed within a statutory grant of jurisdiction." *United States v. Abbring*, No. 22-1610, 2023 WL 3476310, at *1 (6th Cir. May 12, 2023) (quoting *Home Depot U.S.A., Inc. v. Jackson*,

10

587 U.S. 435, 437 (2019)). "No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." 18 U.S.C. § 4001(a). "[A] court lacks the power to exact a penalty that has not been authorized by any valid criminal statute." *Welch v. United States*, 578 U.S. 120, 134 (2016).

Section 3583 grants district courts the authority to "include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a). However, the statute clearly limits the amount of supervised release a court can impose as part of a revocation hearing: "The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." *Id*. § 3583(h). Petitioner correctly notes that "[n]o other statute conceivably authorizes the district court to order a term of supervised release in excess of § 3583(h)." (Doc. 2 at 7.)

The parties agree the second revocation judgment's term of supervised release "unquestionably exceeded the maximum authorized by statute." (Doc. 6 at 9.) The Government is correct that the third revocation judgment does not suffer from this same flaw because it does not impose any term of supervised release following imprisonment. (*Id*. at 8.) However, the Court cannot ignore that the third revocation judgment, and in turn Petitioner's current sentence of incarceration, was a direct result of the Court exceeding its statutory authority in the second revocation judgment. Petitioner is allowed to collaterally attack a legal error that infected his later revocation punishment. *See Penn*, 788 F. App'x at 340.

Pursuant to § 3583(h), the Court was only authorized to sentence Petitioner to supervised release until March 8, 2023. Thus, when the Court revoked Petitioner's supervised release and

11

imprisoned him for conduct that happened in May 2023, the Court no longer had statutory authority to do so. *See* 18 U.S.C. § 3583(h); *Welch*, 578 U.S. at 134. This means Petitioner's current sentence of incarceration imposed during the November 20, 2024, revocation hearing was imposed outside the statutory limits set by Congress. Because the third revocation judgment was imposed in violation of the "laws of the United States" and was a direct consequence of a judgment that was in excess of the maximum authorized by law, Petitioner's challenge to the third revocation judgment has merit. *See* 28 U.S.C. § 2255(a).

Where a § 2255 claim has merit, a district court "shall vacate and set the judgment aside" and, "as may appear appropriate," shall either "discharge the prisoner or resentence him or grant a new trial or correct the sentence." 28 U.S.C. § 2255(b); *see also Ajan v. United States*, 731 F.3d 629, 633 (6th Cir. 2013). Thus, the §2255 motion (Doc. 2) will be **GRANTED IN PART** to the extent the third revocation judgment (Case No. 1:15-CR-120, Doc. 94) will be **VACATED** and **SET ASIDE**. Petitioner will be discharged from custody.

IV. <u>**CONCLUSION**</u>

Accordingly, Petitioner's motion (Doc. 2) will be **DENIED IN PART** and **GRANTED IN PART**. The § 2255 motion (Doc. 2) will be **DENIED IN PART** to the extent the Court will not correct the second revocation judgment (Case No. 1:15-CR-120, Doc. 82) due to Petitioner's untimeliness. The §2255 motion (Doc. 2) will be **GRANTED IN PART** to the extent the third revocation judgment (Case No. 1:15-CR-120, Doc. 94) will be **VACATED** and **SET ASIDE**. Petitioner will therefore be discharged from the current term of incarceration.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**